So Ordered.

Dated: March 13, 2023



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Java Berry,                      Case No. 22-22162-gmh

Debtor.                       Chapter 13

**OPINION AND ORDER ON CREDITOR'S OBJECTION TO CONFIRMATION**

      Debtor Java Berry resides in a house that secures a loan his now deceased mother obtained many years ago. To obtain the loan his mother promised repayment from the home's sale after her death. Berry, who claims an interest in the house as one of his mother's heirs and its current resident, seeks instead to retire the loan and the mortgage that secures it through his chapter 13 plan. The creditor that holds the note and mortgage objects to confirmation of Berry's plan, contending that it cannot provide for the debt until his mother's probate estate is administered.

I

      Gertrude Berry purchased real estate located at 2467-2467A North 57th Street in Milwaukee, Wisconsin (the "Property") in 1996, and she lived there with her son, debtor Java Berry, until her death in 2021. ECF No. 70, at 1; see also ECF No. 68, at 1. In 2007

Ms. Berry borrowed money and pledged the Property as collateral in a transaction commonly referred to as a "reverse mortgage." She signed a non-recourse Adjustable Rate Note (Home Equity Conversion) and an Adjustable Rate Home Equity Conversion Mortgage, which together entitles the note holder to repayment of the note from a sale of the Property after Ms. Berry's death. Claim No. 7-1, at 24–46. Bank of New York Mellon Trust Company, N.A. ("Bank") now holds the note and mortgage, as trustee for a securitization trust. *Id.*

When Ms. Berry died in April 2021 (ECF No. 70, at 1) she was survived by six children, including debtor Java Berry. ECF No. 69, at 1. Java Berry and the Bank agree that no one has commenced a probate proceeding to administer Ms. Berry's estate.

Java Berry, who has lived at the Property continuously since 1996 (ECF No. 70, at 1), filed this chapter 13 case in May 2022. He scheduled the Property as real estate in which he has an interest. ECF No. 16, at 3.

The Bank timely filed a proof of claim for a little more than $151,000 based on Gertrude Berry's non-recourse note and mortgage. See Claim No. 7. The proof of claim states that the claim is fully secured by the Property. *Id.* at 2.

Java Berry has proposed a chapter 13 plan that pays about $63,537, plus interest, on the Bank's claim (an amount equal to the debtor's scheduled value of the Property, less about $6,463 of past-due real estate taxes owed to the City of Milwaukee) over the course of the 60-month plan term. ECF No. 18, at 4 & 7; ECF No. 40. The City of Milwaukee has not filed a claim for the past-due taxes nor has the debtor filed one on its behalf.

II

After two preliminary hearings on the Bank's objection to plan confirmation, the court ordered the parties to file briefs presenting all disputed confirmation issues, except factual disputes over the Property's value. ECF No. 66. The Bank's briefs show

that the gist of its objection to confirmation is a contention that the plan can't provide for payment of its claim until a probate court determines who succeeds Gertrude Berry as the Property's legal owner. Until then, says the Bank, the debtor lacks a sufficient interest in the Property for the plan to provide for payment of the lien on it. To find a home for those contentions in §1325's confirmation requirements, the Bank argues that the debtor cannot demonstrate that the plan is proposed in good faith and by lawful means (as required by §1325(a)(3)) or that it is feasible (as required by §1325(a)(6)).[1]

The debtor responds that he has a sufficient interest in the Property, because *Martin v. City of Milwaukee* (*In re Martin*) concludes that under Wisconsin law after "the death of a property owner, the property vests immediately in the heirs and the heirs take legal title with the right to possession and control." No. 14-31091, 2014 WL 7011042, at *2 (Bankr. E.D. Wis. Dec. 11, 2014) (first citing 23 Am. Jur. 2d *Descent and Distribution* §18 (2002), and then citing *In re Le Feber's Will*, 271 N.W. 95, 96 (Wis. 1937)); see also *id.* at *4 (first quoting *In re Le Feber's Will*, 271 N.W. at 96, then citing *In re Week's Estate*, 172 N.W. 732, 733 (Wis. 1919); then citing *In re Stephenson's Estate*, 177 N.W. 579, 581 (Wis. 1920); and then citing *In re Marshall's Will*, 294 N.W. 527, 529 (Wis. 1940)) ("In a Wisconsin case involving inheritance taxation, the state supreme court noted, 'the property is transferred, not by the closing of the estate, but by the death of the owner, and it occurs at the time of the death of the owner.'"); see also *Riedi v. Heinzl*, 3 N.W.2d 366, 369 (Wis. 1942) ("It is elementary that real estate descends directly to the heirs as of the date of death where the deceased owner dies intestate . . . ."). In reply, the Bank,

---

[1] Confirmation of a chapter 13 plan is governed by §1325, and the Bank's briefs cite only subsections (a)(3) and (a)(6). The Bank's failure to invoke any other §1325 subsection constitutes waiver. As discussed below, however, the Bank does contend that the plan's treatment of its claim is not authorized by §1322(b)(2), which presumably entails an argument that the plan does not comply with §1325(a)(1)'s confirmation requirement that the plan comply with the provisions of chapter 13. This opinion treats the Bank as preserving an argument under §1325(a)(1) only to that extent.

Unless otherwise specified all statutory citations in this opinion are to the Bankruptcy Code, title 11 of the United States Code.

invoking parts of Wisconsin's personal representative and probate statutes, Wis. Stat. §§857.01 and 860.01, asks the court to ignore the precedent on which *Martin* relies, contending that those authorities have been overtaken by statute. ECF No. 72, at 3. Unlike *Martin* and its precedent, however, the statutory provisions cited by the Bank do not address the rights of heirs in a decedent's property before a probate estate is opened.

Fortunately, there is no need to resolve the extent of debtor's ownership interest or whether *Martin*'s reasoning is sound because the Bank filed a secured claim against the estate. To file a proof of claim, one must be a "creditor" under the Bankruptcy Code. 11 U.S.C. §501(a). "The term 'creditor' means", as relevant here, an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor". §101(10)(A). (The "order for relief" for purposes of this case is the debtor's voluntary filing of a bankruptcy petition. See §301(a) & (b)). The Bank does not assert that the debtor is *personally* liable to it—it bases its proof of claim on the non-recourse note and mortgage on the Property executed only by the debtor's mother.[2] Thus, the Bank's proof of claim must be premised on its right to collect from the Property. And that right provides a proper basis for filing a proof of claim if and only if the debtor has an interest in the Property, since the Bankruptcy Code states that a "'claim against the debtor' includes [a] claim against property of the debtor". §102(2). See also *Johnson v. Home State Bank*, 501 U.S. 78, 84–87 (1991) (holding non-recourse right to collect from debtor's property is a "claim" subject to inclusion in chapter 13 plan). What is more, the Bank's proof of claim asserts that it holds a fully secured claim for bankruptcy law purposes. The Bankruptcy Code treats a claim as secured only to the extent that the

---

[2] Before Gertrude Berry died the Bank was awarded a foreclosure judgment in the amount of a little less than $127,500 following her failure to pay property taxes and insurance. ECF Nos. 59-1 & 68, at 1. The Bank's proof of claim neither mentions nor attaches the foreclosure judgment. The foreclosure judgment, like the note and mortgage, allows payment only from sale of the Property, stating, "[n]o deficiency judgment shall be entered against the mortgagor defendant." ECF No. 59-1, at 4 (emphasis omitted).

creditor has a lien on property in which the debtor's bankruptcy estate—"comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case", §541(a)(1)—has an interest. 11 U.S.C. §506(a)(1) ("An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . .").

The Bank can't have it both ways. It has filed a proof of claim against the bankruptcy estate. Having done so, it cannot oppose the debtor's plan to pay that claim by contending that (1) the court lacks jurisdiction—this court unquestionably has jurisdiction over "confirmation of plans" under chapter 13 (see 28 U.S.C. §§157(b)(1), (2)(L) and 1334)—or (2) the plan's treatment of the claim—to pay the Bank the Property's value adjusted for the time-value of money over 5 years—is either proposed in bad faith or "by . . . means forbidden by law" (contrary to §1325(a)(3)) or (somehow) infeasible (contrary to §1325(a)(6)). A chapter 13 plan unquestionably can provide for payment of a claim from the debtor's future income over the course of the plan term, §1322(b)(8), and modify the rights of holders of secured claims in the manner authorized by §1322(b)(2) and (c)(2).

The Bank argues that the plan's modification of its rights is not authorized by §1322, relying on §1322(b)(2)'s prohibition on modifying the rights of creditors who hold claims secured only by a security interest in real property that is the debtor's principal residence. But, as the debtor ripostes, §1322(c)(2) provides a statutory exception to §1322(b)(2)'s prohibition. ECF No. 69, at 3. Section 1322(c)(2) permits plans to pay "a claim secured only by a security interest in real property that is the debtor's principal residence" "as modified pursuant to section 1325(a)(5)" when "the last payment on the original payment schedule for [the] claim . . . is due before the date on

which the final payment under the plan is due . . . ."[3] The Bank does not contest §1322(c)(2)'s applicability—referring to that section only in contending that a debtor with a shared interest in property cannot confirm a plan that modifies a lien on that property, a subject discussed below.[4] As a result, the Bank has forfeited any contention that the plan's treatment of its secured claim is not authorized by §1322(c)(2). ECF No. 66, at 1 ("Any issues not presented or properly developed and supported in this brief will be adjudged forfeited."); see also *M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) (citing *United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006)) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").[5]

The Bank's final contention is that the plan cannot "cramdown" its lien because, if the debtor has an interest in the Property, his five non-debtor siblings do too, and the Bankruptcy Code does not authorize the debtor's plan to modify the Bank's lien on

---

[3] Section 1322(c)(2) provides:

> (c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law . . .
>
> > (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

[4] Even though the debtor's brief relies substantially on §1322(c)(2) and during a hearing that preceded the briefing debtor's counsel asserted his belief that the debtor could modify the secured claim under §1322(c)(2), the Bank's only argument with respect to §1322(c)(2) is that "the language" of sections 1322(b)(2) and (c)(2) "cannot reasonably be construed to suggest that a minority equitable interest can be used to cramdown the entirety of a secured lien" (ECF No. 68, at 6), which, as noted above, is dispensed with below.

[5] This court recently addressed the application of §1322(c)(2) to a reverse mortgage in *In re Sandoval*, 640 B.R. 165 (Bankr. E.D. Wis. 2022). The court there concluded that §1322(c)(2) permitted a debtor who inherited real estate subject to a reverse-mortgage lien to confirm a plan that modified the rights of the lienholder. *Id*. at 173–79.

these non-debtors' interests in the Property. See *In re Flournoy*, 570 B.R. 293, 299–300 (Bankr. E.D. Wis. 2017). While, as *Flournoy* explains, a chapter 13 plan cannot modify a creditor's rights against non-debtors or against the property of non-debtors, the plan at issue here does not modify the Bank's rights against non-debtors or their property. In fact, the debtor's plan does not "cramdown" the Bank's lien at all: the plan proposes to pay the *full amount* of the Bank's claim *as determined by nonbankruptcy law.* Again, the Bank's claim is based solely on a non-recourse note that it can "enforce . . . only through sale of the Property". Claim No. 7-1, at 24. Thus, all the Bank is entitled to under nonbankruptcy law is an amount equal to the value of the Property, which is the amount the plan pays on the claim.[6]

The only remaining question is, does the amount the plan proposes to pay the Bank equal to the value of the Property on the confirmation date? That is a question of fact that the court can resolve only after hearing evidence. But, if the plan does pay the Property's value to the Bank, then the plan provides the Bank full payment of its claim as determined under nonbankruptcy law and complies with §1325(a)(5)(B)(i)(I)(aa)'s lien-retention provisions.

---

[6] The Bank's concern that the revesting of property under §1327 adversely affects any lien it may have on non-debtors' interests in the Property is misplaced. Section 1327(b) states only that confirmation of the "plan vests all of the property of the estate in the debtor." The plan does not purport to vest non-estate property in the debtor. While the Bank correctly observes that the plan can only affect its rights in the debtor's interest in the property (ECF No. 68, at 6), the plan does no more than that, stating that the holder of an allowed secured claim is entitled to retain its "lien on the property interest of the debtor or the estate until the earlier of: (a) payment of the underlying debt determined under nonbankruptcy law, or (b) discharge of the underlying debt . . . at which time the lien on the debtor's and the estate's interest in the property that secures the claim . . . is terminated and deemed released by the creditor." ECF No. 18, at 4. As discussed above, the plan proposes to pay the Bank an amount equal to the underlying debt determined under nonbankruptcy law.

III

For all these reasons, IT IS THEREFORE ORDERED as follows:

1. The Bank's confirmation objection is overruled except to the extent that it objects that the plan understates the Property's value.

2. Unless the Bank withdraws its objection, the court will hold an evidentiary plan-confirmation hearing to adjudicate the plan's valuation of the Property as follows:

    a. **Evidentiary Hearing**. The court will conduct an evidentiary hearing on May 1, 2023, at 11:00 a.m. in courtroom 133 of the United States Courthouse, 517 E. Wisconsin Avenue, Milwaukee, Wisconsin 53202. The debtor, debtor's counsel, counsel for the Bank, an officer or other corporate designate of the Bank vested with full settlement authority, and all witnesses must appear at the May 1, 2023 hearing in person.

    b. **Exhibit deadline.** By no later than **April 24, 2023**, the debtor and the Bank must file copies of exhibits that they contemplate using at the evidentiary hearing. Exhibits should be numbered as described in the procedures posted on the court's website at https://www.wieb.uscourts.gov/content/judge-g-michael-halfenger-chief-judge. To expedite the proceedings, the parties must bring paper copies of all exhibits that the party expects to, or may, offer at the evidentiary hearing. They should have sufficient sets for use by the court and witnesses. The sets for use by the witness and the court must include the ECF filing stamp on each page. The parties are responsible for having their own copies of each exhibit. Regardless of the parties' use of paper exhibits during the evidentiary hearing, the official record exhibits will be those filed on the electronic docket, unless the court otherwise orders.

    c. **Witness deadline.** By no later than **April 24, 2023**, the debtor and the Bank must file with the court a list of the witnesses that they intend to call at the evidentiary hearing in their case-in-chief, along with a brief summary of the testimony each witness will provide at the evidentiary

hearing. For any witness expected to present evidence under Federal Rule of Evidence 702, 703, or 705, the witness list must also include the subject matter on which the witness is expected to present that evidence, and a summary of the facts and opinions to which the witness is expected to testify.

d. The failure to identify an exhibit or witness will result in exclusion of the exhibit or witness, except upon a showing that the failure was substantially justified or harmless.

e. The failure to timely comply with any provision of this order may result in the court taking adverse action against the non-compliant party without further notice or a hearing. The evidentiary hearing will not be rescheduled, except for good cause and by written order of the court.

# # # # #